IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No 13-cv-01574-RBJ-BNB

NATHANIEL JAMES HARVEY, III,

Plaintiff,

v.

CATHERINE SEGURA, in her official and individual capacity and
LT. BRENT LANG, (Unit 4), in his official capacity,

Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on **Defendants Segura and Lang's Motion to Dismiss Plaintiff's
Second Amended Complaint** [Doc. #56, filed 01/21/2014] (the "Motion").  I respectfully
RECOMMEND that the Motion be GRANTED IN PART and DENIED IN PART.

## I.  STANDARD OF REVIEW

The plaintiff is proceeding *pro se*, and I must liberally construe his pleadings.  Haines v.
Kerner, 404 U.S. 519, 520-21 (1972).  I cannot act as advocate for a *pro se* litigant, however,
who must comply with the fundamental requirements of the Federal Rules of Civil Procedure.
Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must accept
the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in
favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493
(1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain
specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado

v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a

plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support

the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis

v. Scherer, 468 U.S. 183 (1984).

      I may treat a Rule 12 motion to dismiss as a motion for summary judgment under Rule 56

when matters outside the pleadings are presented to and not excluded by me and if all parties

have been given a reasonable opportunity to respond as provided in Rule 56.  Fed.R.Civ.P.

12(d).  The plaintiff attached several exhibits to his response.  I have not referred to the exhibits

in my analysis of the defendants' Motion, and I do not convert the motion into one for summary

judgment.  Id.

      The standard of review for a motion to dismiss for lack of subject matter jurisdiction

under Fed.R.Civ.P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject
> matter jurisdiction take two forms. First, a facial attack on the
> complaint's allegations as to subject matter jurisdiction questions
> the sufficiency of the complaint.  In reviewing a facial attack on
> the complaint, a district court must accept the allegations in the
> complaint as true.
>
> Second, a party may go beyond allegations contained in the
> complaint and challenge the facts upon which subject matter
> jurisdiction depends.  When reviewing a factual attack on subject
> matter jurisdiction, a district court may not presume the
> truthfulness of the complaint's factual allegations.  A court has
> wide discretion to allow affidavits, other documents, and a limited
> evidentiary hearing to resolve disputed jurisdictional facts under
> Rule 12(b)(1). In such instances, a court's reference to evidence
> outside the pleadings does not convert the motion to a Rule 56
> motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to
> dismiss into a Rule 12(b)(6) motion or a Rule 56 summary

> judgment motion when resolution of the jurisdictional question is
> intertwined with the merits of the case.  The jurisdictional question
> is intertwined with the merits of the case if subject matter
> jurisdiction is dependent on the same statute which provides the
> substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff is incarcerated by the Colorado Department of Corrections ("DOC") at the

Colorado State Penitentiary.  He filed his Second Amended Complaint on August 15, 2013 [Doc.

#22] (the "Complaint").  At all times relevant to the allegations of the Complaint, however, the

plaintiff was incarcerated at the Fremont Correctional Facility ("FCF").  The Complaint asserts

seven claims for relief.  Claims Three and Four have been dismissed [Doc. #31].  The remaining

claims contain the following allegations:[1]

Claim One: On January 16, 2013, the plaintiff was strip searched by defendant Segura, a

female correctional officer.  The search was conducted in an open hallway on an unsanitary floor

while the plaintiff was barefoot.  The plaintiff's body cavity and genitals were searched.  The

plaintiff is a practicing Shi'ite Muslim who believes that it is unreasonable to be strip searched in

front of Lt. Lang, a male officer, who could have conducted the strip search.  The strip search

violated the plaintiff's Eighth Amendment right to be free of cruel and unusual punishment and

was done in retaliation for complaining about staff harassment. *Complaint*, p. 4.  The strip search

also violated the plaintiff's Fourth Amendment right to be free from unreasonable searches.  Id.

at p. 3.

---

[1]In his response [Doc. #65] to the defendants' Motion, the plaintiff asserts additional
allegations and claims.  The plaintiff may not amend his Complaint in this manner, and I will not
address claims asserted for the first time in a response to a dispositive motion.

Claim Two: On February 12, 2013, Segura confiscated the plaintiff's "kufi," a religious head covering. Id. "Wearing a kufi during prayer times is a required religious obligation." Id. at p. 5. The denial of "the ability to possess and wear religious headwear while making that opportunity available to other religions" violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the plaintiff's First Amendment right to free exercise of religion, and the plaintiff's equal protection rights. Id. at pp. 4-5.

Claim Five: Lt. Lang violated the plaintiff's right to equal protection by "denying plaintiff a reasonable response to oral and written complaints." Id. at p. 7. In addition, Lang was present during the strip search but did not intervene to stop his subordinate's actions. Lang failed to properly supervise Segura. Lang was deliberately indifferent "to plaintiff's health or safety." Id. at p. 7.

Claim Six: Segura's strip search of the plaintiff violated his First Amendment and equal protection rights and RLUIPA. Id.

Claim Seven: Segura's confiscation of the plaintiff's kufi violated his First Amendment and equal protection rights and RLUIPA. Id. at p. 8.

The plaintiff seeks a declaration that the defendants' acts and omissions violated his constitutional rights; injunctive relief in the form of an order prohibiting the defendants from violating his constitutional rights; and compensatory and punitive damages. Id. at p. 9.[2]

## III.  ANALYSIS

---

[2]Any other claims the plaintiff may be attempting to assert are unintelligible and will not be recognized. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (stating that "[t]he broad reading of the plaintiff's complaint does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based").

This action is brought under 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

## A.   Official Capacity Claims

The plaintiff is suing the defendants in their official capacities. *Complaint*, p. 1 (caption). The defendants assert that the official capacity claims for monetary damages must be dismissed on the basis of Eleventh Amendment immunity. *Motion*, pp 4-5.

The Eleventh Amendment bars suits in federal courts against unconsenting states by the state's own citizens and by citizens of another state. Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990). Eleventh Amendment immunity "constitutes a bar to the exercise of federal subject matter jurisdiction." Fent v. Okla. Water Res. Bd., 235 F.3d 553, 559 (10th Cir. 2000) (emphasis omitted). Eleventh Amendment immunity applies to suits arising under 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 345 (1979).

The Eleventh Amendment precludes federal jurisdiction over state officials acting in their official capacities as to retroactive monetary relief, but not as to prospective injunctive relief. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 102-03,105-06 (1984).

The defendants are employed by the DOC. *Complaint*, p. 2. The DOC is an agency or subdivision of the State of Colorado. Consequently, the Eleventh Amendment bars suit against these defendants in their official capacities for retroactive monetary relief. The Motion should be GRANTED to the extent it seeks dismissal of the claims against the defendants in their

official capacities for retroactive monetary relief based on Eleventh Amendment immunity.

## B.  Claims for Declaratory and Injunctive Relief

The defendants assert that the plaintiff's claims for declaratory and injunctive relief

should be dismissed because he is no longer incarcerated at FCF.  *Motion*, pp. 18-20.  In this

regard, the Tenth Circuit Court of Appeals has stated:

> When a prisoner files suit against prison officials who work in the
> institution in which he is incarcerated, seeking declaratory and
> injunctive relief on the basis of alleged wrongful conduct by those
> officials, and then that prisoner is subsequently transferred to
> another prison or released from the prison system, courts are
> presented with a question of possible mootness.  Where the
> prisoner's claims for declaratory or injunctive relief relate solely to
> the conditions of confinement at the penal institution at which the
> prisoner is no longer incarcerated, courts have concluded that they
> are unable to provide the prisoner with effective relief.  Because a
> prisoner's transfer or release signals the end of the alleged
> deprivation of his constitutional rights, an entry of equitable relief
> in his favor would amount to nothing more than a declaration that
> he was wronged, and would have no effect on the defendants'
> behavior towards him.
>
> However, where a prisoner brings a lawsuit challenging policies
> that apply in a generally uniform fashion throughout a prison
> system, courts have been disinclined to conclude that the
> prisoner's declaratory or injunctive claims are moot, even after he
> has been transferred to another prison in that system.  Critically, in
> determining that the transferred prisoners' claims for declaratory
> or injunctive relief were not moot, these courts have focused upon
> the fact that the prisoners had sued defendants who were actually
> situated to effectuate any prospective relief that the courts might
> see fit to grant— viz., that the prisoners had sued the director of
> the prison system or the prison system itself.  Conversely, these
> cases indicate that a transferred prisoner's challenge to
> system-wide prison policies is moot where he seeks equitable relief
> and only sues prison officials at the transferor institution—that is,
> the institution where he was formerly incarcerated.

Jordan v. Sosa, 654 F.3d 1012, 1027-29 (10th Cir. 2011) (internal quotations and citations

omitted).

The plaintiff has been transferred from FCF, the defendants' place of employment, to the Colorado State Penitentiary.  Any prospective declaratory or injunctive relief the court may order would have no effect on the defendants' behavior toward the plaintiff.  Therefore, the claims for declaratory and injunctive relief are moot.

### C.   RLUIPA Claims

In Claim Six, the plaintiff alleges that the strip search violated RLUIPA.  *Complaint*, p. 8. Claims Two and Seven allege that confiscation of the kufi violated RLUIPA.  Id. at pp. 4-5, 8.

RLUIPA provides that an individual may assert a violation of the statute "in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a).  This provision is interpreted as "permit[ting] cases against a government entity, but not against an individual officer, except perhaps in his or her official capacity."   Boles v. Neet, 402 F.Supp.2d 1237, 1240 (D.Colo. 2005); Palecek v. Zavares, Civil Action 09-cv-01351-ZLW-CBS, 2010 WL 3307489 at *6 (D.Colo. July 1, 2010) (listing cases).  The Tenth Circuit has recognized that "[s]everal circuit courts have held, under the principles of sovereign (Eleventh Amendment) immunity, that money damages are not available for official-capacity RLUIPA claims." Abdulhaseeb v. Calbone, 600 F.3d 1301, 1311-12 (10th Cir. 2010).  Although the Tenth Circuit did not decide the issue, district courts in this circuit have determined that the Eleventh Amendment bars RLUIPA claims for monetary damages against defendants sued in their official capacities. Palecek, 2010 WL 3307489 at *6 (listing cases).

Persuaded by these cases, I find that the plaintiff's RLUIPA claims should be dismissed against Segura in her individual capacity, and the RLUIPA claims against Segura and Lang in

their official capacities should be dismissed insofar as they seek monetary damages.  In addition, because the plaintiff's claims for declaratory and injunctive relief are moot, the plaintiff's RLUIPA claims should be dismissed in their entirety.  Finally, because there are no remaining claims against defendant Lang, he should be dismissed from this action.

### D.  Individual Capacity Claims

The plaintiff is suing defendant Segura in both her individual and official capacities. *Complaint*, p. 1 (caption).  Segura asserts that she is entitled to qualified immunity.[3]  *Motion*, pp. 14-15.  Qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In order for a right to be "clearly established" for purposes of assessing entitlement to qualified immunity, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

When analyzing the issue of qualified immunity, I  consider two factors.  I must determine whether the plaintiff has sufficiently alleged a violation of a statutory or constitutional right.  In addition, I must inquire whether the right was clearly established at the time of the violation.  Wilson v. Layne, 526 U.S. 603, 609 (1999); Butler v. City of Prairie Village, Kansas,

---

[3]Lang asserts that he is also entitled to qualified immunity.  Id.  However, Lang is not sued in his individual capacity.  *Complaint*, p. 1 (caption).  "When it comes to defenses to liability, an official in a personal-capacity action may, depending on his position, be able to assert personal immunity defenses, such  as objectively reasonable reliance on existing law.  In an official-capacity action, these defenses are unavailable.  The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, qua entity, may possess, such as the Eleventh Amendment."  Graham, 473 U.S. at 166-67.

172 F.3d 736, 745 (10th Cir. 1999).[4]

### 1.  Claims One and Six: Strip Search

### a.  Eighth Amendment

In Claim One, the plaintiff alleges that the strip search violated his Eighth Amendment rights.  *Complaint, p. 4.*  The defendants argue that the plaintiff fails to state a claim upon which relief can be granted.  *Motion*, pp. 6-7.

The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. Const. amend. VIII.  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring that inmates receive adequate food, clothing, shelter, and medical care and take "reasonable measures to guarantee the safety of the inmates."  Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quotations and citations omitted).

A prisoner claiming an Eighth Amendment violation must establish both objectively and subjectively that particular conditions of confinement constitute cruel and unusual punishment.  Wilson v. Seiter, 501 U.S. 294, 297-298 (1991).  To satisfy the objective component, a plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm."  Farmer, 511 U.S. at 834.  To satisfy the subjective component, a plaintiff must demonstrate that the prison official was "deliberately indifferent" to a substantial risk of serious harm.  Farmer, 511 U.S. at 834.  The subjective component of a deliberate indifference claim is met if a prison

---

[4]The order in which I may consider these factors is discretionary.  Pearson v. Callahan, 555 U.S.223, 236 (2009).  However, both prongs must be satisfied.  Herrera v. City of Albuquerque, 589 F.3d 1064, 1070 (10th Cir. 2009).

official "knows of and disregards an excessive risk to inmate health or safety." <u>Farmer</u>, 511 U.S. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u>

The allegations of the Complaint do not satisfy either component. The plaintiff does not allege any specific facts to show that the strip search was conducted in an abusive fashion or with excessive force. He alleges only that it was performed by a female guard in an open hallway on an unsanitary floor while he was barefoot. There are no allegations that the search itself was conducted in an unsanitary manner, was without any penological justification, or that anyone other than prison officials were present. The plaintiff's allegations do not state a claim under the Eighth Amendment. <u>Levoy v. Mills</u>, 788 F.2d 1437, 1439 (10th Cir. 1986) (stating that a body cavity search is not cruel and unusual punishment where it was not conducted in an abusive fashion or with unnecessary force).

### b. Retaliation

Claim One also alleges that Segura performed the strip search in retaliation for the plaintiff's complaints about staff harassment. *Complaint*, p. 4. The defendants argue that the plaintiff fails to allege a claim for retaliation. *Motion*, pp. 7-9.

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." <u>Peterson v. Shanks</u>, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotations and citation omitted). The First Amendment protects the right to free speech and the right to petition the government for redress of grievances. U.S. Const. Amend. I. "This principle applies even if the action taken in retaliation would be otherwise permissible." <u>Id.</u> at 948.

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." Poole v. County of Otero, 271 F.3d 955, 960 (10th Cir. 2001) *abrogated on other grounds by* Hartman v. Moore, 547 U.S. 250 (2006).  An inmate, however, is not "inoculated from the normal conditions of confinement experienced by convicted felons serving time in prison merely because he is engaged in protected activity." Peterson, 149 F.3d at 1144. Therefore, to prevail on a claim of retaliation a plaintiff "must prove that but for the retaliatory motive, the incidents to which he refers . . . would not have taken place." Id. (quotations and citation omitted).  "An inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." Id. (quotations and citation omitted) (emphasis in original).

The plaintiff does not allege any facts to show that his exercise of a constitutional right triggered the retaliation.  He alleges only that Segura retaliated against him "for complaining about staff harassment."  Complaining about staff harassment, without more, is not a protected constitutional right.  Moreover, the plaintiff does not allege any specific facts to show that Segura knew he had complained of harassment or otherwise had a retaliatory motive.  The plaintiff's conclusory allegation of retaliation is insufficient to state a claim upon which relief can be granted.

### c.  Equal Protection

Claim Six also alleges that the strip search violated the plaintiff's equal protection rights. *Complaint*, p. 7.  The defendants argue that the plaintiff has failed to state a claim for violation of his equal protection rights. *Motion*, pp. 9-10.

11

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (quotations and citation omitted). The plaintiff's allegations regarding the strip search do not implicate the Equal Protection Clause.

**d.  First Amendment Free Exercise of Religion Claim and Fourth Amendment Claim**

Claim Six alleges that the strip search violated the plaintiff's First Amendment right to free exercise of religion. *Complaint*, p. 8. In addition, the plaintiff alleges that the strip search violated his Fourth Amendment rights. Id. at p. 3. The defendants do not address those claims. Therefore, I make no recommendation regarding the plaintiff's allegations that the strip search violated his First  and Fourth Amendment rights.

**2.  Claims Two and Seven: Confiscation of the Kufi**

**a.  First Amendment Free Exercise of Religion**

The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. Although inmates retain First Amendment rights, those rights are not without reasonable limitations. O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives--including deterrence of crime, rehabilitation of prisoners, and institutional security." Id.   In addition:

> In considering the appropriate balance of these factors, we have
> often said that evaluation of penological objectives is committed to

> the considered judgment of prison administrators, who are actually
> charged with and trained in the running of the particular institution
> under examination.  To ensure that courts afford appropriate
> deference to prison officials, we have determined that prison
> regulations alleged to infringe constitutional rights are judged
> under a "reasonableness" test less restrictive than that ordinarily
> applied to alleged infringements of fundamental constitutional
> rights.  We recently restated the proper standard: When a prison
> regulation impinges on inmates' constitutional rights, the
> regulation is valid if it is reasonably related to legitimate
> penological interests.  This approach ensures the ability of
> corrections officials to anticipate security problems and to adopt
> innovative solutions to the intractable problems of prison
> administration and avoids unnecessary intrusion of the judiciary
> into problems particularly ill suited to resolution by decree.

Id. at 349 (internal quotations and citations omitted).

In order to establish a constitutional violation of his right to free exercise of religion, the plaintiff bears the initial burden of demonstrating that the restriction substantially burdened his sincerely held religious beliefs.  Boles v. Neet, 486 F.3d 1177, 1182 (10th Cir. 2007).  The Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs,"  Thomas v. Review Bd. of Ind. Employment Sec. Div., 450 U.S. 707, 718 (1981).

In Claims Two and Seven, the plaintiff alleges that "[w]earing a kufi during prayer times is a required religious obligation" and that the defendants are "denying him the ability to wear religious headwear."  *Complaint*, pp. 5, 8.  These allegations are sufficient to state a claim for violation of the plaintiff's First Amendment right to free exercise of religion.

The defendants argue that the claim fails because the "shakedown list" (found at page 21 of the Complaint) indicates that the confiscated kufi was an "extra" kufi, and the plaintiff does not allege that the confiscated kufi was his only kufi.  *Motion*, pp. 10, 12.  The shakedown list

contains a list of items including "1 extra kufi." *Complaint*, p. 21. However, it appears that the list was created by a prison official, not the plaintiff. The defendants also argue that the claim fails because the plaintiff does not allege "how long he went without a kufi, if at all, and whether he prayed during that time, had other religious items to compensate, or was substantially burdened from not having that specific black kufi." Id. Accepting the allegations of the Complaint as true, and construing all reasonable inferences in favor of the plaintiff, as I must, the plaintiff has sufficiently alleged that his religion requires him to wear a kufi during prayer times and he is being denied the opportunity to do so.

It has been clearly established since 1987 that prison officials may not infringe on an inmate's First Amendment right to free exercise of religion unless the infringement is reasonably related to a legitimate penological interest. O'Lone, 482 U.S. at 348. Therefore, Segura is not entitled to qualified immunity, and the Motion should be denied insofar as it seeks dismissal of the allegations contained in Claims Two and Seven regarding violation of the plaintiff's First Amendment right to free exercise of religion.

### b.  Equal Protection

In Claims Two and Seven, the plaintiff alleges that Segura violated his equal protection rights when she confiscated his kufi. *Complaint*, pp. 4, 8. The defendants argue that the plaintiff has failed to state a claim for relief. *Motion*, p. 11.

The plaintiff does not allege any specific facts to show that he was treated differently than similarly situated inmates; he simply makes one conclusory allegation that "other religions" have the opportunity to possess and wear religious headwear." Id. Claims Two and Seven fail to state a plausible claim for violation of the Equal Protection clause, and the Motion should be granted

insofar as it seeks dismissal of those claims.

### 3.   Compensatory Damages Under the Prison Litigation Reform Act

The defendants assert that the plaintiff's claims for compensatory damages are limited by

the Prison Litigation Reform Act ("PLRA").  *Motion*, pp. 16-17.  The PLRA provides in pertinent

part:

> No Federal civil action may be brought by a prisoner confined in a
> jail, prison, or other correctional facility, for mental or emotional
> injury suffered while in custody without a prior showing of physical
> injury.

42 U.S.C. § 1997e(e).

Section 1997e(e) applies regardless of the nature of the underlying substantive violation

asserted.  Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir 2001) (applying section 1997e(e) to

the plaintiff's First Amendment claim for free exercise of religion).  Although section 1997e(e)

bars recovery of compensatory damages for failure to allege physical injury, it does not bar

recovery of punitive damages or declaratory or injunctive relief.  Id., at 881; Perkins v. Kansas

Dept. of Corrections, 165 F.3d 803, 808 (10th Cir. 1999).

The plaintiff alleges that he suffered mental and emotional injury.  Therefore, the

plaintiff's claims are barred to the extent they seek compensatory damages.

### 4.  Punitive Damages

The defendants assert that the plaintiff's request for punitive damages should be denied

because he has failed to allege facts to show that the defendants knew they were violating his

constitutional rights or that they acted with callous indifference as to whether their actions were

unconstitutional.  *Motion*, p. 18.  Punitive damages are available in an action under section 1983

"when the defendant's conduct is shown to be motivated by evil motive or intent, or when it

15

involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 35 (1983). I decline to make this determination on a motion to dismiss, particularly where the defendants have not addressed the plaintiff's First and Fourth Amendment claims regarding the strip search. The defendants' Motion should be denied as premature insofar as its seeks dismissal of the plaintiff's claim for punitive damages.

## IV.   CONCLUSION

I respectfully RECOMMEND that Defendants Segura and Lang's Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. #56] be GRANTED IN PART and DENIED IN PART as follows:[5]

(1)   GRANTED to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief based on Eleventh Amendment immunity;

(2)   GRANTED insofar as it seeks dismissal of the plaintiff's claims for declaratory and injunctive relief as moot;

(3)   GRANTED insofar as it seeks to dismiss the RLUIPA claims;

(4)   GRANTED insofar as it seeks to dismiss all claims against defendant Lang;

(5)   GRANTED to the extent it seeks dismissal of allegations in Claims One and Six that the strip search was retaliatory and violated the Eighth Amendment and the Equal Protection

---

[5]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Clause;

(6)   DENIED to the extent it seeks dismissal of allegations in Claim Six that the strip search violated the plaintiff's First Amendment right to free exercise of religion and the plaintiff's allegation that the strip search violated his Fourth Amendment rights;

(7)   GRANTED insofar as it seeks dismissal of allegations in Claims Two and Seven that confiscation of the kufi violated the plaintiff's equal protection rights;

(8)   DENIED to the extent it seeks dismissal of allegations in Claims Two and Seven that confiscation of the kufi violated the plaintiff's First Amendment right to free exercise of religion;

(9)   GRANTED insofar as it seeks dismissal of the plaintiff's request for compensatory damages as barred by the Prison Litigation Reform Act; and

(10)   DENIED as premature insofar as it seeks dismissal of the plaintiff's request for punitive damages.

Dated April 29, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge