IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 13-cv-01574-RBJ-BNB

NATHANIEL JAMES HARVEY, III,

    Plaintiff,

v.

CATHERINE SEGURA, in her official and individual capacity and
LT. BRET LANG, (Unit 4), in his official capacity,

    Defendants.

# ORDER

    This matter is before the Court on the April 29, 2014 Recommendation [ECF No. 76] of Magistrate Judge Boyd N. Boland that the Court grant in part and deny in part Defendants Segura and Lang's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 56]. The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

    The Recommendation advised the parties that specific written objections were due within fourteen (14) days after being served with a copy of the Recommendation. [ECF No. 76 at16 n.5.] The defendants filed objections to portions of the Recommendation on May 13, 2014. [ECF No. 82]. The plaintiff effectively filed two requests for an extension of time to object to the Recommendation on the grounds that he did not receive a full copy of the Recommendation when it was published. [ECF Nos. 90 & 95]. The Court issued an order to send Mr. Harvey another copy of the Recommendation and also extended his response deadline to July 25, 2014.

1

[ECF No. 96]. Mr. Harvey filed his objections on July 17, 2014. [ECF No. 105]. For the following reasons, the Recommendation is affirmed and adopted except to the extent that it recommends the Court maintain two claims that were left unaddressed by the defendants' original motion to dismiss. The Court will address each of these claims in this Order.

## STANDARD OF REVIEW

Following the issuance of a magistrate judge's recommendation on a dispositive matter, the district court judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). The district judge is permitted to "accept, reject, or modify the recommended disposition; receive further instruction; or return the matter to the magistrate with instructions." *Id.* "In the absence of timely objection, the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.")). "When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 note of advisory committee on rules (collecting cases).

The Court liberally construes the filings of a *pro se* litigant. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as the advocate of the *pro se* litigant, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants

must follow the same procedural rules that govern other litigants. *E.g.*, *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992).

## BACKGROUND

A thorough summary of the factual background of this case was provided in the Recommendation, which has been incorporated herein. Plaintiff Nathaniel James Harvey III is a prisoner currently incarcerated at the Colorado Department of Corrections ("DOC") at the Colorado State Penitentiary. However, at all times relevant to the allegations of the Complaint Mr. Harvey was incarcerated at the Fremont Correctional Facility ("FCF"). The Complaint asserts seven claims for relief, though claims three and four have been dismissed. *See* [ECF No. 31]. The remaining claims are as follows:

Claim One: Illegal strip search (a) in violation of the Eighth Amendment and (b) in retaliation for complaints made about staff harassment in violation of the First Amendment;[1]

Claim Two: Confiscation of kufi (religious head covering) in violation of (a) the First Amendment; (b) the Religious Land Use and Institutional Persons Act ("RLUIPA"); and (c) the Equal Protection Clause of the Fourteenth Amendment;

Claim Five: Defendant Lang's (a) violation of the plaintiff's right to equal protection by "denying plaintiff a reasonable response to oral and written complaints;" (b) failure to properly supervise Defendant Segura; and (c) violation of the Eighth Amendment by being deliberately indifferent "to plaintiff's health or safety";

---

[1] Judge Boland adds that Claim One alleges a violation of the Fourth Amendment right to be free from unreasonable searches, citing the third page of the Second Amended Complaint. Recommendation [ECF No. 76] at 3. However, while a violation of the Fourth Amendment is asserted in the "Nature of the Case" section of the Complaint, Mr. Harvey fails to include such a claim in any of his causes of action. Even upon a liberal reading of the Complaint, no factual allegations are made that support a cause of action on the basis of the Fourth Amendment outside of the conclusory assertion in the "Nature of the Case" section. Therefore, the Court does not recognize this claim as properly asserted or, in the alternative, sufficiently pled. This claim will be more fully discussed below.

Claim Six: Strip Search in violation of (a) the Equal Protection Clause of the Fourteenth Amendment; and (b) the First Amendment;[2] and

Claim Seven: Confiscation of kufi in violation of (a) the First Amendment and (b) the Equal Protection Clause of the Fourteenth Amendment.

Mr. Harvey seeks declaratory and injunctive relief as well as compensatory and punitive damages.

## ANALYSIS

The defendants moved to dismiss the Second Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Rule 12(b)(1) concerns whether the Court has jurisdiction to hear the case before it. "Federal courts are courts of limited jurisdiction and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "Jurisdiction is a threshold question that a federal court must address before reaching the merits of a statutory question, even if the merits question is more easily resolved and the party prevailing on the merits would be the same as the party that would prevail if jurisdiction were denied." *Id.* "[S]tatutes conferring jurisdiction on federal courts are to be strictly construed, and doubts resolved against federal jurisdiction." *F & S Const. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964). "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya*, 296 F.3d at 955 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Subject matter jurisdiction may be challenged by a

---

[2] Judge Boland adds that Claim Six includes a complaint of a violation of RLUIPA. Recommendation [ECF No. 76] at 4. While such a claim could be construed based on the factual allegations presented, Mr. Harvey only alleges violations of the First and Fourteenth Amendments under Claim Six. Second Amended Complaint [ECF No. 20] at 7–8. Though the Court is to liberally construe the pleadings of *pro se* plaintiffs, it is clear that Mr. Harvey knows how to allege a violation of RLUIPA as he does so in Claim Two. That said, even if the Court were to find such a claim sufficiently pled, for the reasons discussed below all of Mr. Harvey's claims arising under RLUIPA must be dismissed for lack of available relief.

4

party or raised *sua sponte* by the Court at any point in the proceeding. Fed. R. Civ. P. 12(h)(3); *Harris v. Illinois-California Exp., Inc.*, 687 F.2d 1361, 1366 (10th Cir. 1982).

In reviewing a 12(b)(6) motion to dismiss, the Court must accept the well-pleaded allegations of the complaint as true and construe them in the plaintiff's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory need not be assumed to be true. *Id.* at 681. However, so long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See, e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). The Court looks to the factual allegations made within the pleadings and not in other filings with the Court. *See Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.").

For ease of reference, the Court analyzes each claim in the manner and order presented in the Recommendation.

### A. Official Capacity Claims.

Judge Boland recommended that the Court dismiss the official capacity claims for monetary damages on the basis of Eleventh Amendment immunity. [ECF No. 76 at 5]. In his objection, Mr. Harvey states that "[g]enerally, a suit against an employee is treated as a claim against the employer, which is D.O.C. Consequently, the motion should be denied to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive

5

monetary relief." [ECF No. 105 at 6]. The plaintiff cites one case in support of this conclusion, *Farmer v. Perrill*, 275 F.3d 958 (10th Cir. 2001). That case, however, discusses whether a *Bivens* action is barred by prior judgment under the Federal Tort Claims Act of a claim involving the "same subject matter." Simply put, the case does not resolve this issue.

As Judge Boland explained in his Recommendation, the Eleventh Amendment sovereign immunity doctrine provides that state officials acting in their official capacities cannot be sued for retroactive monetary relief. [ECF No. 76 at 5] (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102–03, 105–06 (1984)). This rule applies in all cases, and cannot be disregarded here. The Court therefore adopts this portion of the Recommendation.

### B. Claims for Declaratory and Injunctive Relief.

Judge Boland recommended that all claims for declaratory and injunctive relief be dismissed as moot given Mr. Harvey's transfer from FCF to DOC. In his objection, Mr. Harvey writes that he "does not object to Judge Boland's Recommendation" to dismiss these claims for relief. [ECF No. 105 at 7]. The Court has reviewed Judge Boland's analysis for clear error and has found none. The Court hereby adopts this portion of the Recommendation.

### C. RLUIPA Claims.

Judge Boland recommends the dismissal of Mr. Harvey's RLUIPA claims on a number of grounds. First, he established that RLUIPA only provides for actions against government entities, including officers sued in their official capacities. As such, money damages would not be available for RLUIPA claims. Second, as discussed above, the claims for declaratory and injunctive relief should be dismissed. In turn, Judge Boland found that there could be no relief under RLUIPA and recommended dismissal of the claims.

Mr. Harvey objected to the recommendation, though he focused his arguments on the merits of the underlying claims. *See* [ECF No. 105 at 9–11]. The reason Judge Boland recommended the dismissal of these claims, however, was because no relief would be possible under the law. Because Mr. Harvey has been transferred out of FCF, there could be no declaratory or injunctive relief; and because RLUIPA only allows for claims against governmental entities, the sovereign immunity doctrine bars retroactive monetary damages. The Court agrees that no claim for relief remains under RLUIPA and as such adopts this portion of the Recommendation.

Because all of the official capacity claims have been dismissed, Lieutenant Lang is no longer a part of this action.

### D. Individual Capacity Claims.

Individual capacity claims have only been asserted against Officer Segura. As such, the following subsections only refer to the allegations made against Officer Segura, who contends that she is entitled to qualified immunity on any claims not otherwise dismissed.

1. Claims One and Six: Strip Search

*a. Eighth Amendment*

Judge Boland recommended that the Court dismiss Mr. Harvey's claim that his Eighth Amendment rights were violated when he was subject to a strip search. According to Judge Boland, Mr. Harvey failed to plead sufficient facts to meet either the objective or subjective prongs of the Eighth Amendment cruel and unusual punishment test. The Court agrees.

"The plaintiff does not allege any specific facts to show that the strip search was conducted in an abusive fashion or with excessive force." Recommendation [ECF No. 76] at 10. As such, the allegations do not state a claim for relief under the Eighth Amendment. At most,

Mr. Harvey's objection states that the strip search was in fact conducted in an "abusive fashion" because he alleged that Officer Segura "grabbed" his genitals. [ECF No. 105 at 13]. He argues that this type of contact violates the Eighth Amendment as the act caused "the unnecessary and wanton infliction of pain." *Id.* However, Mr. Harvey's complaints regarding the strip search primarily speak to the fact that Officer Segura is a woman—whereas a male officer could have conducted the search—and that the search was conducted in an open hallway on an unsanitary floor while Mr. Harvey was barefoot. *See* Second Amended Complaint [ECF No. 20] at 4. Mr. Harvey did contend that the body cavity search "was unreasonable and conducted in an abusive fashion and did not meet any administrative prison policy." *Id.* Yet this statement is nothing but a conclusory assertion. In effect, the only factual allegation in support of Mr. Harvey's Eighth Amendment claim is that Officer Segura "grabbed" his genitals. Upon a de novo review of the Complaint, the Court finds that this statement, on its own, does not sufficiently plead an Eighth Amendment violation. This portion of the Recommendation is therefore adopted.

*b. Retaliation*

As part of Claim One, Mr. Harvey alleges that his strip search and the conditions surrounding it "represent a pattern of events demonstrating intentional retaliation against Harvey by defendant's [*sic*] Catherine Segura for complaining about staff harassment . . . ." Second Amended Complaint [ECF No. 20] at 4. There are no other statements in the Complaint concerning this claim of retaliation. Judge Boland recommended this claim be dismissed for a number of reasons, including the fact that complaining about staff harassment, without more, is not a protected constitutional right, and also because Mr. Harvey does not allege specific facts showing that Officer Segura knew of these complaints or otherwise had a retaliatory motive. [ECF No. 76 at 11]. In his objections, Mr. Harvey alleges that he was subject to a "campaign of

8

harassment" in retaliation for filing complaints of harassment as well as in retaliation for filing a lawsuit against Officer Segura. [ECF No. 105 at 18, 23]. However, these allegations are nowhere to be found in the Complaint. As noted above, the Court can only take into account allegations made within the four corners of the Complaint, not those that arise in other filings.

Liberally construing the Complaint, the Court finds that Mr. Harvey sufficiently pled that he took part in protected speech by petitioning government officials for a redress of grievances. However, the Court agrees with Judge Boland that Mr. Harvey fails to plead that Officer Segura knew of the complaints or otherwise had a retaliatory motive. As such, the Court adopts this portion of the Recommendation.

*c. Equal Protection*

Under Claim Six, Mr. Harvey asserts that Officer Segura violated his equal protection rights when performing the strip search "by denying him a suitable or adequate condition of being striped [*sic*] searched according to the AR-300-06 as regulated by CDOC, while making such accommodations to other similarly situated inmates throughout DOC."[3] Second Amended Complaint [ECF No. 20] at 7. Judge Boland recommended that this claim be dismissed on the grounds that "[t]he plaintiff's allegations regarding the strip search do not implicate the Equal Protection Clause." [ECF No. 76 at 11]. The Court has reviewed Mr. Harvey's objections a number of times and finds no objection to or mention of his Claim Six equal protection claim. As such, any objection to this recommendation is considered waived. The Court has reviewed Judge Boland's analysis for clear error and has found none. As such, the Court adopts this portion of the Recommendation.

---

[3] Mr. Harvey does not include the language of AR-300-06 in the Complaint. From what I can gather, it likely provides that strip searches should be performed by officers of the same sex when practicable. However, this is only conjecture based on my reading of the Complaint. Having the actual language of the regulation, while informative, would not change the outcome of this case.

### *d. First Amendment Free Exercise of Religion Claim*

Judge Boland found that Claim Six also stated a violation of Mr. Harvey's right to free exercise of religion under the First Amendment. However, the defendants do not address this claim in their motion to dismiss. In their objection, the defendants argue that Claim Six only included an equal protection claim, citing the title of the Claim as proof. However, as the defendants are well aware, a *pro se* plaintiff's pleadings are to be liberally construed. In reading the body of the Claim, it is clear that Mr. Harvey alleged not only an equal protection violation but also a free exercise of religion claim. In particular, Mr. Harvey cites the First Amendment, states that the strip search gave "rise to violations of inmates [*sic*] religious tenets" and proceeds to quote passages from the Qur'an. Second Amended Complaint [ECF No. 20] at 7. While inartfully titled, Claim Six distinctly makes out a cause of action under the First Amendment.

Because the defendants did not seek dismissal of this claim, Judge Boland did not consider whether Officer Segura would be shielded from liability under the qualified immunity doctrine. In the original motion to dismiss, the defendants asserted that "[t]here is no clearly established law indicating that a female correctional officer violates an inmate's rights when she conducts a routine body cavity strip search . . . ." [ECF No. 56 at 15].

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity protects state actors from liability as well as suit but only if their conduct does not violate clearly established constitutional rights of which a reasonable person should have known. *Id.* "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at

10

the time it was taken." *Id.* at 244 (internal quotation marks and citation omitted).  Overall, qualified immunity "operates to ensure that before they are subjected to suit, officers are on notice that their conduct is unlawful." *Hope v. Pelzer*, 536 U.S. 730, 731 (2002).

"Generally, when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[4]  *Cillo v. City of Greenwood Village*, 739 F.3d 451, 460 (10th Cir. 2013).  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Estate of Booker v. Gomez*, 745 F.3d 405, 411 (10th Cir. 2014) (internal quotation marks and citation omitted).  "The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity."  *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (citation omitted).

In analyzing the "clearly established" prong first, the Court finds that Officer Segura is entitled to qualified immunity on this claim.  The Court finds that the right—being free from strip search by a guard of the opposite sex on the basis of religious convictions—was not clearly established at the time of Officer Segura's conduct.  From what the Court could find (since the defendants apparently did not look), most cases that concern improper strip searches allege violations of the Fourth Amendment right to privacy, although some also discuss the Eighth Amendment's proscription of cruel and unusual punishment.  Very few, however, allege violations of an inmate's religious freedoms under the First Amendment.  Overall, I was able to find two cases on point, both in district courts outside of this Circuit.

---

[4] These factors can be considered in either order.  *See Pearson*, 555 U.S. at 236.

In *Jean-Laurent v. Lawrence*, 12 CIV. 1502 JPO SN, 2013 WL 1129813 (S.D.N.Y. Mar. 19, 2013) *reconsideration denied,* 12 CIV. 1502 JPO, 2014 WL 1282309 (S.D.N.Y. Mar. 28, 2014), Judge Oetken of the Southern District of New York held that "[i]rrespective of whether the practice of forcing Muslim men to be stripped down to their underwear in the presence of female officers is constitutional," the defendants were entitled to qualified immunity because there was no case law from the Supreme Court or the Second Circuit Court of Appeals supporting a finding that it violates a Muslim inmate's constitutional rights to be searched in his underwear in the presence of female officers. 2013 WL 1129813 at *9.

On the other hand, Judge Fischer of the Western District of Pennsylvania refused to find that the defendants were entitled to qualified immunity in *Brothers v. Lawrence County Prison Board*, CIV.A. 06-1285, 2008 WL 146828 (W.D. Pa. Jan. 14, 2008). However, the basis for this denial was simply that the defendants had not carried their burden of showing that the law was not clearly established. 2008 WL 146828 at *13. Judge Fischer did not find that the conduct was in fact clearly established as infringing on an inmate's First Amendment rights.

In this Circuit, the law is clear that the plaintiff carries the burden of proof to show that his rights were clearly established at the time the alleged misconduct occurred. Mr. Harvey has not made any such showing. I take into account that Mr. Harvey is an inmate representing himself. Nevertheless, the Court was unable to find authority from the Supreme Court or the Tenth Circuit, or a consensus from other courts, establishing the right he claims. That does not mean that courts might not, at a later date, find that such a right exists. However, under the Tenth Circuit's qualified immunity analysis the Court cannot hold a state official liable for conduct that was not clearly established as being in violation of the Constitution at the time the conduct took place. Officer Segura is entitled to qualified immunity on this claim.

*e. Fourth Amendment Unreasonable Search Claim*

Judge Boland also noted that Mr. Harvey alleged that the strip search violated his Fourth Amendment rights—citing page three of the Second Amended Complaint—and that the defendants also failed to address this claim. The defendants objected to this characterization of Mr. Harvey's claims, noting that "[t]here is simply no reference to the Fourth Amendment in [C]laim [S]ix, contrary to the Recommendation." [ECF No. 82 at 3]. The Court agrees. However, Judge Boland is correct in noting that Mr. Harvey does in fact allege a Fourth Amendment violation in the "Nature of the Case" section of his Complaint. Upon thorough review, the Court has not found another mention of this claim in the "Cause of Action" section of the Complaint. Even upon a liberal reading of the Complaint, the only allegation made is that the defendants "violat[ed] his 4th amend. Unreasonable search . . . right" with no factual allegations concerning in what way the search was unreasonable. At no point does Mr. Harvey allege that the search itself was unjustified, just that it violated his rights in the manner in which it was conducted.[5] Therefore, insofar as a Fourth Amendment claim can be read into the Complaint, it must fail for insufficient pleading. This claim is therefore dismissed.

2. <u>Claims Two and Seven: Confiscation of the Kufi</u>

*a. First Amendment Free Exercise of Religion*

Judge Boland recommended that the Court not dismiss Mr. Harvey's claim that confiscation of his kufi, a religious head covering, infringed on his free exercise of religion. In particular, Mr. Harvey alleged that wearing a kufi during prayer times is a required religious obligation, and that the defendants were denying him the ability to wear the kufi by confiscating it. The defendants object to this recommendation on the grounds that Mr. Harvey did not put

---

[5] Mr. Harvey does contend that the search was unjustified in his objections to the Recommendation. However, the Court must base its decision on the four corners of the Complaint, and not on allegations made in other filings.

forward sufficient allegations demonstrating that he was substantially burdened from practicing his religion when Defendant Segura confiscated his kufi. [ECF No. 82 at 4]. The basis for their argument is that the "shakedown list" on which the confiscation is recorded lists the kufi as an "extra" kufi, and that Mr. Harvey had not alleged that he had no other kufi available for use. *See id.* at 4–5. Judge Boland rejected this argument on the grounds that the list was prepared by a prison official, not Mr. Harvey. To that the defendants responded that Mr. Harvey attached the shakedown list to his Complaint, effectively rendering it a part of his pleading.

The Court is not persuaded. If anything, Mr. Harvey appears to have attached this list for the purpose of demonstrating that there was some truth to his allegation that his kufi was in fact confiscated. *See* Second Amended Complaint [ECF No. 20] at 8. The Court is not going to punish Mr. Harvey for attempting to make his pleadings stronger, especially when the defendants disregard Mr. Harvey's explicit allegation that he was denied "the ability to wear religious headwear." *Id.* The Court finds the defendants' subsequent argument—that even if this kufi had been his sole one, Mr. Harvey did not assert that he was, in fact, forced to pray without it—even less availing. The Court has reviewed the pleadings de novo and finds that Mr. Harvey successfully pled a violation of his First Amendment rights when his kufi was confiscated.

Once again, Officer Segura contends that she is entitled to qualified immunity. The original motion to dismiss claims, without support, that "there is no clearly established law indicating that an officer violates an inmate's rights by confiscating an extra religious headwear item for an unspecified period of time and with no articulated effect on the inmate's prayer practice." [ECF No. 56 at 15]. Of course, put that way the Court would be bound to find that Mr. Harvey did not sufficiently plead a Constitutional violation. Suffice it to say, the Court agrees with Judge Boland that it is in fact clearly established that prison officials may not

infringe on an inmate's First Amendment right to free exercise of religion unless the infringement is reasonably related to a legitimate penological interest. Recommendation [ECF No. 76] at 14. The defendants did not object to this conclusion. The Court has found no clear error upon review and finds that Officer Segura is not entitled to qualified immunity on this claim.

   *b. Equal Protection*

Mr. Harvey alleged that the confiscation of his kufi violated the Equal Protection Clause because members of other religions were able to wear religious headwear while he was not. Second Amended Complaint [ECF No. 20] at 8. Judge Boland recommended dismissing this claim on the grounds that this sole statement, without more, does not contain sufficient factual allegations supporting a claim that Mr. Harvey was treated differently than similarly situated inmates. [ECF No. 76 at 14]. Mr. Harvey wrote that he "makes no objection to Magistrate Bolands [*sic*] ruling in regards to Claim Two and Seven for failing to state a plausible claim for violation of the Equal Protection Clause, and the Motion should be granted insofar as it seeks dismissal of those claims." [ECF No. 105 at 16]. The Court has reviewed Judge Boland's analysis for clear error and has found none. The Court therefore adopts this portion of the Recommendation.

   3. Compensatory Damages under the Prison Litigation Reform Act ("PLRA")

Judge Boland recommended dismissing Mr. Harvey's claims for compensatory damages because he fails to allege that he suffered physical injury, a prerequisite for compensatory damages under the PLRA. Mr. Harvey objects, arguing that he sufficiently alleged that he suffered physical injury in his prayer for relief section by requesting "damages in his favor . . . in an amount sufficient to compensate him for the 'PAIN.'" [ECF No. 105 at 16–17]. He

continues that "the prayer for relief is part of the pleading and could reasonably be viewed as a request for compensatory damages and relief." *Id.* at 17. Finally, he asserts that he suffered a physical injury because he required medication and/or medical treatment after the strip search. *Id.* Presumably he is referring to the mental health treatment referenced in the Complaint. *See* Second Amended Complaint [ECF No. 20] at 7. The Court has reviewed de novo every allegation in the Second Amended Complaint and has found no specific allegation that Mr. Harvey suffered any physical—i.e. not mental or emotional—harm. Therefore, the Court adopts this portion of the Recommendation.

The Court pauses to note that even though the plaintiff may not seek compensatory damages without alleging a physical injury, he will be entitled to nominal damages should it be found that his rights have been violated. *See Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001). Further, "as a general rule, punitive damages may be recovered for constitutional violations without a showing of compensable injury." *Id.* at 880. Simply put, the PLRA does not bar recovery of punitive damages even when a prisoner is otherwise barred from seeking compensatory damages. *Id.* at 880–81.

### 4. Punitive Damages

Finally, Judge Boland recommended that the Court not dismiss Mr. Harvey's request for punitive damages. In particular, Judge Boland noted that punitive damages are available in section 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." [ECF No. 76 at 15–16] (quoting *Smith v. Wade*, 461 U.S. 30, 35 (1983)). Judge Boland stated the he would not make a determination as to whether these showings had been made at the motion to dismiss stage, "particularly where the defendants have not addressed the plaintiff's

16

First and Fourth Amendment claims regarding the strip search." *Id.* at 16.  He then recommended that the motion for dismissal of the punitive damages request for relief be denied as premature.

The defendants object on the grounds that "Judge Boland's analysis regarding punitive damages *relies on* the assumption that [C]laim [S]ix also includes First and Fourth Amendment claims . . . ." [ECF No. 82 at 5' (emphasis added).  This formulation is a mischaracterization of Judge Boland's reasoning.  Judge Boland stated that he "decline[d] to make this determination on a motion to dismiss," adding that he certainly would not make such a determination when not all of the plaintiff's claims had been addressed in the motion to dismiss.  That said, even if the defendants had addressed these claims, the Court would still adopt Judge Boland's recommendation.  The pleading is replete with references to intentional misconduct on the part of Officer Segura.  Of course, that does not mean Mr. Harvey will be able to make a showing that Officer Segura's conduct, if found to have violated his constitutional rights, rose to such a level that he should be awarded punitive damages.  But the motion to dismiss this request for relief is premature at this time.  The Court therefore adopts this portion of the Recommendation.

## CONCLUSION

To simplify the holdings discussed above, Mr. Harvey has one claim remaining against one defendant: Mr. Harvey has sufficiently pled that Officer Segura violated First Amendment rights by confiscating his kufi.  Because Mr. Harvey has not alleged that this confiscation caused him to suffer a physical injury, his claim is limited to one for punitive damages.

The Court has adopted and affirmed all of the recommendations made by Judge Boland, except for the recommendation to maintain the two claims that were left unaddressed by the

17

defendants' original motion to dismiss. For the sake of efficiency, the Court has analyzed and disposed of these two claims.

**ORDER**

It is ORDERED that the Recommendation of United States Magistrate Judge [ECF No. 76] is ACCEPTED and ADOPTED. It is further ORDERED that Defendants Segura and Lang's Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 56] is GRANTED IN PART and DENIED IN PART, as follows:

(1) GRANTED to the extent it seeks dismissal of the claims against the defendants in their official capacities for retroactive monetary relief;

(2) GRANTED insofar as it seeks dismissal of the plaintiff's claims for declaratory and injunctive relief;

(3) GRANTED insofar as it seeks to dismiss the RLUIPA claims;

(4) GRANTED insofar as it seeks to dismiss all claims against defendant Lang;

(5) GRANTED to the extent it seeks dismissal of allegations in Claims One and Six that the strip search was retaliatory in violation of the First Amendment; was conducted in violation of the Eighth Amendment; and that it violated the Equal Protection Clause;

(6) GRANTED to the extent it seeks dismissal of allegations in Claim Six that the strip search violated the plaintiff's First Amendment and Fourth Amendment rights;

(7) GRANTED insofar as it seeks dismissal of allegations in Claims Two and Seven that confiscation of the kufi violated the plaintiff's equal protection rights;

(8) DENIED to the extent it seeks dismissal of allegations in Claims Two and Seven that confiscation of the kufi violated the plaintiff's First Amendment right to free exercise of religion;

(9) GRANTED insofar as it seeks dismissal of the plaintiff's request for compensatory damages as barred by the PLRA; and

(10) DENIED as premature insofar as it seeks dismissal of the plaintiff's request for punitive damages.

DATED this 14th day of August, 2014.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

19