**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-01574-RBJ-NYW

NATHANIEL JAMES HARVEY, III,

    Plaintiff,

v.

CATHERINE SEGURA, in her individual capacity,

    Defendant.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Magistrate Judge Nina Y. Wang

This civil action comes before the court on the Motion for Summary Judgment filed by Defendant Catherine Segura ("Defendant or Officer Segura") [#133, filed February 18, 2015]. This matter was referred to this Magistrate Judge pursuant to the Order Referring Case dated November 5, 2013 [#38], the Order of Reassignment dated February 9, 2015 [#130], and the memorandum dated April 14, 2015 [#143].

After carefully considering the Motion and related briefing, the entire case file, and the applicable case law, I respectfully RECOMMEND that Defendant Segura's Motion for Summary Judgment be GRANTED.

**PROCEDURAL HISTORY**

Mr. Harvey is a *pro se* prisoner in the custody of the Colorado Department of Corrections ("CDOC"). He filed this lawsuit on June 14, 2013 pursuant to 42 U.S.C. § 1983 claiming violations under the United States Constitution stemming from a strip search conducted by a

female prison official. [#1]. Plaintiff also filed a motion for leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, which was granted on June 19, 2013. [#3, #9]. At the time Plaintiff filed his Complaint he was housed at the Fremont Correctional Facility ("FCF"), which is where the events giving rise to this lawsuit occurred. Plaintiff filed an Amended Prisoner Complaint on June 17, 2013. [#7]. Section 1915 and the Local Rules of this District require a court to evaluate a prisoner complaint and dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); D.C.COLO.LCivR 8.1(b). On June 25, 2013, the court ordered Plaintiff to file a Second Amended Prisoner Complaint that complies with the pleading requirements of Fed. R. Civ. P. 8 and Rule 10.1 of the Local Rules of Practice for the U.S. District of Colorado. [#11]. On July 1, 2013, Plaintiff notified the court that he had been transferred to Buena Vista Correctional Complex-Main & Boot Camp ("BVCC"). [#13].

Plaintiff filed a Second Amended Complaint ("SAC") on August 15, 2013, naming Defendant Segura in addition to Roger Werholtz, Lou Archuleta, and Brent Lang. Mr. Harvey identifies himself as a practicing Shi'ite Muslim since his conversion to Islam in 1989. [#22 at 5]. He alleges that on January 16, 2013, Defendant Segura, a female prison guard, subjected him to a strip search in the hallway of the unit #4 office area in the presence of Lieutenant Lang and another male officer. [*Id.* at 4]. Plaintiff alleges that Defendant Segura "grabbed" his genitals during the search. Mr. Harvey asserts that it was sexually degrading and humiliating for him to be strip-searched by a female officer in an open hallway, that Defendant Segura's actions during the strip search were in retaliation for his complaints about staff harassment, and that Lieutenant Lang failed to intervene when Defendant Segura engaged in inappropriate behavior during the

strip search. [*Id.* at 4, 6]. He further asserts that the strip search violated his religious tenets, as set forth in the Qur'an. [*Id.* at 7]. Mr. Harvey also alleges that Defendant Segura confiscated his religious headwear, known as a kufi.[1] "Wearing a kufi during prayer times is a required religious obligation," and is part of his religious beliefs. [*Id.* at 5].

The SAC asserted seven claims for relief. Following the court's Order to Dismiss in Part and to Draw Case pursuant to D.C.COLO.LCivR 8.1(b) and (c) [#31], Magistrate Judge Boland's Recommendation [#76], and District Judge Jackson's Order [#106], one claim remains at issue, with two issues presented: whether Plaintiff can demonstrate that Officer Segura acting in her individual capacity violated his First Amendment rights when she confiscated his kufi, and whether he is entitled to punitive damages.

Defendant Segura filed her Answer on August 27, 2014 [#107]. After obtaining an extension of time, Defendant filed the pending Motion for Summary Judgment on February 18, 2015. [#133].[2] On March 18, 2015, Plaintiff sought and received an extension of time to file a Cross-Motion for Summary Judgment [#136, #137], which he filed on March 30, 2015. [#140]. Two days later, Defendant filed a Motion to Strike the Cross-Motion on the basis that it consisted of a 48-page brief, plus 60 pages of exhibits, plus an attachment of 44 pages for a total of 152 pages, and argued that Plaintiff did not organize his Cross-Motion to designate a statement of facts, legal standards, or principal argument. [#141]. This court granted the Motion to Strike and gave Plaintiff leave to refile "in a form that complies with RBJ Practice Standards

---

[1] "A kufi is a traditional skull cap and is associated with members of the Islamic faith." *Toure v. United Natural Foods*, 12–cv–02790–RM–KLM, 2014 WL 2442962, at *5 n.4 (D.Colo. May 30, 2014) (citation omitted).

[2] The court vacated the Final Pretrial Conference in a Minute Order dated January 9, 2015. [#129].

on or before May 18, 2015." [#147]. Plaintiff timely filed a motion styled as a Cross Summary Judgment Motion [#148], which the court denied as moot on May 21, 2015, observing that the motion was simply a notice of where Plaintiff is currently housed. [#149].

## STATEMENT OF UNDISPUTED MATERIAL FACTS

The following undisputed material facts are taken from the SAC and pending Motion for Summary Judgment [#22; #133 at 1-6]. Plaintiff is in CDOC custody.[3] When he filed the initial Complaint, and at all times pertinent to the allegations in the SAC, Plaintiff was housed at FCF. #22 at 4; #133 at 1]. Plaintiff is a practicing Shi'ite Muslim and converted to this faith in 1989. [#22 at 5]. On February 12, 2013, Officer Segura confiscated Plaintiff's kufi during a "pack-out search" of his cell.[4] [#22 at 4; #133 at 2]. Plaintiff's faith requires him to wear a kufi during prayer. [#22 at 5].

Jeremiah Hansen, the property sergeant at FCF, attests that the CDOC property regulations that were in effect in February 2013, and remain in effect, require inmates to account for their personal property by maintaining property lists. [#133-10 at ¶ 5]. These regulations promote prison safety and help to reduce contraband. [*Id.*] Items not accounted for are considered contraband and are confiscated. [*Id.*; #133-3 at 3; #133-1 at 2, 11]. Generally, items listed on an inmate's property list are safe from confiscation unless the item is found to have been altered to pose a threat, contain contraband, exceed the prisoner's property limit, or have

---

[3] The last Notice of Address Change Plaintiff filed stated that he was housed at Sterling Correctional Facility. [#144]. His Cross Summary Judgment Motion stated he was housed at Colorado State Penitentiary ("CSP"), however. [#148]. A copy of the Minute Order denying the Cross Summary Judgment Motion [#149] was mailed to Plaintiff at CSP on May 21, 2015 [#150], and it has not been returned as undeliverable.

[4] A pack-out search occurs when an inmate is moved to a different location within the prison facility. [#133-10 at ¶ 13].

otherwise violated prison policy. [*Id.* at ¶ 7]. The confiscating officer notifies Sergeant Hansen by email of what item has been removed and why. Sergeant Hansen prints the email, adds it to the prisoner's file, and updates the prisoner's property list by removing the item or reducing the quantity of the item accordingly. [*Id.*]

Personal faith property must conform to CDOC Administrative Regulation ("AR") 850-06. [#133-10 at ¶ 6; #133-3]. AR 850-06 informs prisoners on how to properly update their property lists so that they may retain possession of their personal property. [#133-3 at 8]. AR 850-06 is intertwined with AR 800-01G, which limits inmates to possessing only one head covering. [*Id.* at ¶¶ 3, 9; #133-2 at 30]. Sergeant Hansen took inventory of Plaintiff's possessions when he arrived at FCF on September 14, 2012, and noted that Plaintiff had one kufi and that his property list noted one kufi. [#133-10 at ¶ 12].

Defendant Segura and a male officer conducted a pack-out search of Plaintiff's cell on February 12, 2013. Plaintiff's property list for that date included one kufi. [#133-10 at ¶ 14; #133-4 at 2]. Following the pack-out search, Officer Segura and her associate completed a DC Form 300-6A "Shakedown List" listing the items they had confiscated from Plaintiff. This included "1 extra kufi." [#133-7 at ¶¶ 7, 8, 9]. Sergeant Hansen attests that in his experience, "extra" denotes an additional item not included on the prisoner's property list. [*Id.*] He further attests that no record exists indicating that Plaintiff's property list was amended on February 12, 2013 to reflect that Plaintiff was in possession of anything other than one kufi. [*Id.* at ¶ 15]. On February 21, 2013, Sergeant Hansen sent Plaintiff an updated property list that included a multi-outlet that he had requested earlier that month. [#133-10 at ¶ 16; #133-5]. The list included one kufi. [*Id.*] Plaintiff signed and dated that list on February 21, 2013. [*Id.*]

5

Sergeant Hansen attests that Plaintiff never attempted to purchase a kufi from the facility's canteen, never requested that one be donated by the Faith and Citizen Coordinator, and did not otherwise seek to obtain one from CDOC recognized vendors. [#133-10 at ¶ 17]. When Plaintiff was transferred from FCF to BVCC on June 25, 2013, his property list, which he signed and dated, included one kufi. [*Id.* at ¶¶ 18, 21; #133-6; #133-9 at ¶¶ 6-8]. Hansen attests that Plaintiff's property records for the time he was housed at FCF were never amended to list anything other than one kufi. [*Id.* at ¶ 19].

## STANDARD OF REVIEW

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Henderson v. Inter–Chem Coal Co., Inc.,* 41 F.3d 567, 569 (10th Cir. 1994). "A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or conversely, is so one-sided that one party must prevail as a matter of law. *Anderson,* 477 U.S. at 248–49; *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir. 2000); *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987). A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party. *Anderson,* 477 U.S. at 248. "Where the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat. Bank of Ariz. v. Cities Service Com*, 391 U.S. 253, 289 (1968)).

In reviewing a motion for summary judgment the court views all evidence in the light most favorable to the non-moving party. *See Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1213 (10th Cir. 2002). Although the applicable summary judgment standard requires the court to view the facts in the light most favorable to the non-moving party, it does not require the court to make unreasonable inferences in favor of the non-moving party. *Carney v. City & Cnty. of Denver*, 534 F.3d 1269, 1276 (10th Cir. 2008) (quoting *Starr v. Downs*, 117 Fed. App'x. 64, 69 (10th Cir. 2004)). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.,* 43 F.3d 555, 557 (10th Cir. 1994) (citation omitted). Because Mr. Harvey did not file a Response to Defendant Segura's Motion for Summary Judgment, this court deems the properly supported facts offered by Defendant as true. See Fed. R. Civ. P. 56(e)(2); *Lammle v. Ball Aerospace & Techs. Corp.*, Case No. 11-cv-3248-MSK-MJW, 2013 WL 4718928, at *1 (D. Colo. Sept. 1, 2013). When, as here, the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 671 (10th Cir. 1998) (citation omitted). Even where, as with Defendant Segura's Motion for Summary Judgment, certain facts have been deemed as true, the court may not enter summary judgment unless the moving party carries her burden under Rule 56 of the Federal Rules of Civil Procedure. *See Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

Against this background, the court notes that "[a] *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant, including … summary judgment proceedings." *Id.* at n.3 (citations omitted). However, the court cannot be a *pro se* litigant's advocate. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). *See also Anderson*, 477 U.S. at 256 (The nonmovant "may not rest upon mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial.").

## ANALYSIS

Title 42 U.S.C. § 1983 provides a vehicle that allows an injured person to seek damages for the violation of his or her federal constitutional rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins,* 487 U.S. 42, 48 (1988). The First Amendment to the United States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "Inmates…retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (citation omitted). These protections are not without reasonable limitations, and "a prison regulation imping[ing] on inmates' constitutional rights ... is valid if it is reasonably related to legitimate penological interests." *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (quoting *O'Lone*, 482 U.S. at 348-49).

The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted). Qualified immunity is an affirmative defense to § 1983 liability (*see Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995)); once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

The Tenth Circuit has adopted a two-step inquiry for district courts considering whether a prisoner-plaintiff has stated a constitutional violation based on a free exercise claim. The plaintiff must first show that his "sincerely-held religious beliefs" were "substantially burdened." *Boles v. Neet,* 486 F.3d 1177, 1182 (10th Cir. 2007). And he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). After the plaintiff satisfies this requirement, the prison officials-defendants may "identif[y] the legitimate penological interests that justif[ied] the impinging conduct." *Boles,* 486 F.3d at 1182. Upon such a showing, the district court balances the factors set forth in *Turner v. Safley,* 482 U.S. 78, 89–91 (1987), to determine the reasonableness of the conduct:

> 1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have

> on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Kay*, 500 F.3d at 1218-19 (quoting *Boles,* 486 F.3d at 1181).[5]

Mr. Harvey alleges that Defendant Segura confiscated his kufi on February 12, 2013 during a pack-out search. [#22 at 4, 8]. He further alleges that he is a practicing Shi'ite Muslim and that "[w]earing a kufi during prayer times is a required religious obligation." [*Id.* at 5]. Plaintiff contends that Chapter 7, verse 31 of the Qur'an states, "O children of Adam! Be ye (adorned) at every time of prostration…" [*Id.* at 8]. Defendant Segura concedes in her Motion for Summary Judgment that Plaintiff's religious beliefs are sincerely held *see* [#133 at 7], but argues he cannot show that those beliefs were substantially burdened by the confiscation of the kufi. This court agrees.

Officer Segura's documentary and testimonial evidence demonstrates that Plaintiff had at least one kufi in his possession at all time. He entered FCF with one kufi and he left FCF with one kufi. [#133-10 at ¶¶ 12, 18, 21; #133-6; #133-9 at ¶¶ 6-8]. He did not purchase or otherwise acquire a kufi while he was FCF. [#133-10 at ¶ 17]. On February 21, 2013, nine days after Defendant confiscated his kufi, Plaintiff signed an updated property list that included one kufi. [#133-10 at ¶ 16; #133-5]. Plaintiff failed to establish a genuine issue of material fact that the confiscation of a particular kufi substantially burdened his Muslim beliefs when another continued to be available to him.

Furthermore, I find that, in consideration of the four *Turner* factors, the CDOC Regulations that prompted the confiscation promote legitimate penological interests. As an

---

[5] *Turner* is applicable even where the plaintiff is challenging a prison official's individual actions, as opposed to a regulation. *Boles*, 486 F.3d at 1181 n.4.

initial matter, a rational connection exists between the personal property policy and the several governmental interests of maintaining order, a secure environment, and the safety of guards and inmates. Sergeant Hansen attests that numerous items he has confiscated pursuant to the Regulations contained "shanks, drugs, razor blades, and other weapons." [#133-10 at ¶ 8]. In addition to security, the policies are aimed at instilling accountability and policy compliance in inmates. [#133-10 at ¶ 5]. CDOC does not prohibit inmates from possessing or wearing a kufi, they simply may not keep more than one. *See* [#133-2 at 30]. Therefore, the right Plaintiff is asserting is to collect more than one kufi, or to keep a kufi that is considered to have been altered to pose a threat. *Cf. Muhammad v. Lynaugh*, 966 F.2d 901 (5th Cir. 1992) (affirming that state prison regulation prohibiting inmates from wearing kufis outside of the prison chapel and their cells bore reasonable relationship to legitimate penological interest of prison security.) While the addition of a single piece of religious clothing may, to a removed observer, seem unimportant, "judgments regarding prison security are particularly within the province and professional expertise of corrections officials," and nothing in the record before this court suggests that CDOC officials have "exaggerated their response to these considerations," such that the court should not defer to their expert judgment in prohibiting possession of multiple kufis. *Beerheide v. Suthers*, 286 F.3d 1179, 1184-85 (10th Cir. 2002). As for requiring inmates to take responsibility for updating their property lists, Sergeant Hanson attests that it would be "impracticable, burdensome, and unfeasible" for FCF, home to approximately 1,600 prisoners, to keep an account of each inmate's personal property without notification from the inmate of a change. [#133-10 at ¶ 20].

Mr. Harvey has not provided any evidence to demonstrate that the kufi that Defendant Segura confiscated was the one kufi he was allotted under the regulations and the one listed on his property list; nor has he shown that his only kufi was confiscated for reasons other than it had been "altered to pose a threat," was "deemed to contain contraband, or otherwise violate[d] prison policy." [#133-10 at ¶ 7]. Accordingly, I find that Officer Segura is entitled to judgment as a matter of law.

## CONCLUSION

For the foregoing reasons, this court RECOMMENDS that:

(1) The Motion for Summary Judgment [#133] be GRANTED; and

(2) JUDGMENT IN FAVOR of Defendant Catherine Segura and AGAINST Plaintiff Nathaniel James Harvey III be ENTERED.[6]

---

[6] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED: August 10, 2015 BY THE COURT:

s/Nina Y. Wang_____
United States Magistrate Judge